UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

LISSANDER DONES,

                                              Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

                                            Defendants.

**DECLARATION OF FRANCIS X. TERAN**

07 Civ. 3085 (SAS) (GWG)

------------------------------------------------------------------- x

      **FRANCIS X. TERAN**, declares that the following is true and correct under penalty of perjury:

      1.    I am a Sergeant with the New York City Police Department ("NYPD"). I have been a member of the NYPD since April 1991. I have been assigned to the NYPD's Internal Affairs Bureau ("IAB"), Group 41, since September 29, 2003. I submit this declaration in support of Defendants' Motion for Summary Judgment. This declaration is based on the books and records of the NYPD and my own personal knowledge.

      2.    At IAB, I am responsible for conducting internal investigations of uniformed members of the service assigned to the Organized Crime Control Bureau who are suspected of misconduct.

      3.    In the Fall of 2003, I became aware that the United States Attorney's Office for the Eastern District of New York ("USAO") had opened a drug trafficking investigation involving NYPD officers who were suspected of stealing money from drug dealers. The Federal Bureau of Investigation ("FBI") and Officers from IAB were asked to assist the USAO in the investigation.

4.  Since the investigation involved current NYPD officers, IAB was also involved to assess whether officers were engaging in official misconduct. I along with Deputy Inspector Scollan, who was a Captain in 2004, oversaw the case for the NYPD. Kenneth Hosey was the FBI Agent assigned to the case.

5.  At the beginning of the investigation, there appeared to be leaks in the case. The FBI suspected that someone from within the NYPD was providing information to the officers who were a target of the federal investigation. The FBI requested that IAB investigate the issue of the internal leak.

6.  On November 27, 2003, I arrested Julio Vasquez in connection with the drug trafficking investigation and he was arraigned in Queens County Criminal Court.

7.  On December 3, 2003, the Federal authorities re-arrested Mr. Vasquez and arrested Mr. Rachko in connection with the drug trafficking investigation.

8.  On or about December 12, 2003, at an interview with Mr. Vasquez, he stated that Luis Nieves-Diaz, another NYPD detective, had also been involved in stealing approximately $250,000 from drug couriers.

9.  The FBI then requested that the NYPD obtain Mr. Nieves-Diaz's telephone records. The NYPD also began investigating whether Mr. Nieves-Diaz engaged in official misconduct.

10.  Upon review of Mr. Nieves-Diaz's telephone records, the NYPD determined that Detective Dones, who worked in IAB, Group 51, had contacted Luis Nieves-Diaz on or about November 27, 2003.

11. In or around January 2004, I, along with FBI agent Kenneth Hosey spoke with Mr. Nieves-Diaz and he confirmed that he had spoken with Detective Dones concerning the Vasquez investigation.

12. In June 2004, Group 41 received computer logs which indicated that Detective Dones had accessed computer files concerning the Vasquez investigation on or about November 27, 2003.

13. An officer who is not a part of Group 41 is not permitted to access computer files concerning Group 41's investigations.

14. Based upon this information, Agent Hosey wanted to speak with Detective Dones concerning his conversation with Nieves-Diaz and the computer files.

15. IAB also wanted to speak with Detective Dones, as it appeared that based on the documents, Detective Dones violated internal procedures by accessing the investigation's computer files without authorization.

16. On July 8, 2004, Agent Hosey, along with myself, Scollan, Mejia and Morton arrived on Detective Dones' street at approximately 6:30 AM.

17. When Detective Dones exited his residence at approximately 7:00 AM, Agent Hosey approached Detective Dones' residence and began speaking with him. I arrived shortly thereafter.

18. Agent Hosey asked Detective Dones' whether or not he had contacted Nieves-Diaz about Vasquez's arrest and if he had accessed computer files concerning the Vasquez investigation.

19. Detective Dones admitted that: (1) he had spoken with Nieves-Diaz concerning the investigation; (2) he had accessed computer files concerning Vasquez's arrest; and (3) no one had access to his unique computer identification.

20. Detective Dones then stated that he did not want to speak in front of his apartment because he did not want his neighbors to see him.

21. Detective Dones then agreed to leave in Lieutenant Mejia's vehicle.

22. Once in the vehicle, we drove to Yankee Stadium. Agent Hosey and Deputy Inspector Scollan followed in their cars.

23. At Yankee Stadium, I asked Detective Dones if he was willing to participate in the NYPD investigation into Nieves-Diaz and if he had any information relative to the investigation.

24. Detective Dones denied any information regarding the IAB or the FBI investigation.

25. I then left to handle other NYPD official business. I did not accompany Detective Dones to the IAB Group 1 office in Lower Manhattan.

26. I was not involved in the decision to place Detective Dones on modified duty on July 8, 2004 nor did I speak with anyone at the FBI or the NYPD concerning the decision to place Detective Dones on modified duty.

27. Upon information and belief on or about August 2, 2004, the NYPD served Mr. Nieves-Diaz with charges and specifications of grand larceny and possession of a duplicate NYPD shield.

28. On or about August 13, 2004, Mr. Nieves-Diaz was served with amended charges of criminal possession and impeding an official investigation.

29. After a department trial, on or about August 19, 2004, Assistant Commissioner John Grappone found Mr. Nieves-Diaz guilty of Grand Larceny and possession of a duplicate NYPD shield. Mr. Nieves-Diaz was later terminated by Commissioner Raymond Kelly in or around August 2004.

30. The next time I spoke with Detective Dones was on September 7, 2004, when I officially interviewed him under the provisions of the NYPD Patrol Guide 206-13. Detective Dones was represented by counsel.

31. At the interview, Detective Dones denied, among other things, accessing computer files in the Vasquez investigation.

32. Based upon the paper documentation, which indicated that someone using Detective Dones's unique computer identification accessed computer files, that Detective Dones had communicated with Nieves-Diaz concerning the Vasquez investigation, and that Detective Dones had seemingly used a department vehicle to visit Nieves-Diaz while off duty, the Department served Detective Dones with charges and specifications in September and October 2004.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
April 15, 2008

FRANCIS X. TERAN