UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
LISSANDER DONES,

                                           Plaintiff,

        - against -

THE CITY OF NEW YORK, et al.,

                                         Defendants.

------------------------------------------------------------------- x

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

07 Civ. 3085 (SAS) (GWG)

Pursuant to Local Rule 56.1 of the Civil Rules of United States District Court for the Eastern District of New York, Defendants the City Of New York, Police Commissioner Raymond Kelly, Sergeant Frank Teran, Deputy Inspector[1] Thomas Scollan, Lieutenant Ronald Mejia and Sergeant Julius Morton submit this Statement of Material Facts as to which they contend there are no genuine issues to be tried:

**A.  Preliminary Facts**

      1.      Plaintiff, a former New York City Police Department ("NYPD") detective, brings this action alleging that while employed with the NYPD, the Department improperly detained him and denied him union representation and a lawyer in violation of the 5th and 14th amendments to the United States Constitution. See plaintiff's complaint, dated April 10, 2007 ("Compl.") Exhibit "1."[2]  Plaintiff also alleges that defendants conspired to place him on modified duty in violation of 4 2 U.S.C. § 1985(3). See id.

---

[1] During the relevant time period, July-September 2004, defendant Thomas Scollan was a Captain with the New York City Police Department.

[2] Unless otherwise indicated, all references to numbered "Exhibits" are to the numbered exhibits annexed to the declaration of Carolyn Walker-Diallo, dated April 15, 2008.

2.Plaintiff began working as a New York City Police officer on or about January 21, 1985. See Operations Unit, Report of Suspension/Modified Assignment, dated September 7, 2004, Exhibit "A." to the Declaration of Patrick Sullivan ("Sullivan Decl.")[3]

3.In or around January 1986, plaintiff was assigned to the NYPD 50th Precinct. Plaintiff's Deposition Transcript ("Pl. Tr.") 18:17-20, 24:19-20, Exhibit "2." While assigned to the 50th Precinct, plaintiff met former NYPD officer Luis Nieves-Diaz. See id.

4.In or around 1989, plaintiff was promoted to the rank of detective and transferred to the Manhattan Narcotics unit. See id. at 18:1-23:1-10.

5.While working at the Manhattan Narcotics unit, plaintiff met Julio Vasquez, another former NYPD officer. See id. at 23:1-20. Pl. Tr. Mr. Vasquez "trained" plaintiff and taught plaintiff "how to buy drugs" as an undercover officer. See id.

6.On or about May 11, 1995, plaintiff transferred to the to Internal Affairs Bureau ("IAB"), Group 51. See Exhibit "A." to the Sullivan Decl.

7.Plaintiff remained in contact with both Mr. Vasquez and Mr. Nieves-Diaz after his transfer to IAB. See id. at 24:1-8; 25:1-10.

8.In or around the Fall of 2003, the United States Attorney's Office for the Eastern District of New York ("USAO") opened a drug trafficking investigation, surrounding NYPD officers stealing money from drug dealers. See Declaration of Francis X. Teran ("Teran Decl."), ¶ 3, dated April 15, 2008. Thomas Rackho and Julio Vasquez, both former NYPD officers, were suspected of engaging these illegal activities. See id. at ¶ 7.

---

[3] Unless otherwise indicated, all references to lettered "Exhibits" are to the numbered exhibits annexed to the declaration of Patrick Sullivan, dated April 15, 2008.

9. Officers from IAB Group 41 were involved in the investigation, as it involved NYPD officers. See id. at ¶ 4. Deputy Inspector Thomas Scollan and Sgt. Frank Teran from IAB Group 41 oversaw the investigation for the NYPD. See id.

10. Kenneth Hosey was the FBI agent assigned to the case. See id.

11. As the investigation began there was a major problem with leaks in the case. See Teran Decl. ¶ 5

12. It appeared that someone from within the NYPD was providing information to the other officers who were a target of the investigation. See id.

13. The FBI asked IAB, Group 41, to investigate whether any of their personnel had access to files concerning the Vasquez investigation. See id.

14. On or about November 27, 2003, Mr. Vasquez, a Narcotics officer, were arrested by Sergeant Francis X. Teran in Queens County New York. See id. at ¶ 6.

15. That same day, plaintiff's unique computer ID was used to access the computer files concerning the FBI/IAB investigation. See Teran Decl. ¶ 10.

16. On or about December 3, 2003, Mr. Vasquez and Ms. Rachko were arrested by the Federal Authorities for various crimes in connection with the federal drug trafficking investigation.. See Docket Sheet, United States v. Julio Vasquez and United Sates v. Thomas Rachko, Exhibit "9" and Exhibit "10"; See also, New York Times Articles, Exhibit "5" and Exhibit "6"; Teran Decl. ¶ 7.

17. During this time, Mr. Nieves-Diaz, another NYPD officer, was also being investigated for assisting another detective in stealing $250,000 in drug money. See Teran Decl. ¶ 8; New York Times Article dated September 24, 2004, Exhibit "4" to the Walker-Diallo Decl.

18. Further investigation revealed that the plaintiff made telephone calls to Luis Nieves Diaz, the subject of the FBI and NYPD investigations and that the phone calls were made close in time to when plaintiff's unique computer ID was used to access files on the case. See Teran Decl. ¶¶ 10, 12.

19. Agent Hosey determined that he wanted to speak with plaintiff concerning his communication with Nieves-Diaz and whether or not plaintiff accessed the computer files. See id. at ¶ 14. As plaintiff was a NYPD officer, members of IAB also went to speak to plaintiff to determine if plaintiff violated any NYPD Rules and Procedures. See id. at ¶ 15.

20. On July 8, 2004 Agent Kenneth Hosey, Sgt. Frank Teran, Captain Scollan, Lieutenant Julius Morton and Lieutenant Ronald Mejia arrived at plaintiff's residence at approximately 6:30 AM. See Teran Decl. ¶ 16.

21. When plaintiff exited his residence at approximately 7:00 AM, Agent Hosey approached plaintiff. See id. at ¶ 17. Sgt. Teran arrived shortly thereafter. See id.

22. Agent Hosey asked plaintiff about his communications with Nieves-Diaz and if plaintiff had accessed the computer files concerning the drug trafficking investigation. See id. at ¶ 18.

23. Plaintiff agreed to leave from in front of his house to speak with the officers, as he was embarrassed and did not want his neighbors to see him. See Pl. Tr. 39:1-14, Exhibit "2" to the Walker-Diallo Decl.

24. Plaintiff then entered one of the NYPD officer's vehicle. See id.

25. At his deposition, plaintiff testified that he was not forced to enter the vehicle. See id.

26. Plaintiff also testified that he was not informed that he was the subject of an official NYPD investigation. See id. at 50:23-25.

27. At no time during plaintiff's conversation with FBI Agent Hosey or any of the individual defendants did plaintiff request permission to leave. See id. at 43:6-7; 46:20-47:9.

28. Plaintiff was driven to Yankee stadium, which was close by plaintiff's home, where the decision was made to take plaintiff to IAB Group 1 in Lower Manhattan.

29. Agent Hosey, Sergeant Teran and Captain Scollan did not accompany plaintiff to the IAB Group 1 office. See id. at 68:11-12; Teran Decl. ¶ 25.

30. Once plaintiff arrived at Group 1, plaintiff was placed on modified duty and his guns were removed.

31. At the time plaintiff was placed on modified duty, the NYPD was aware that plaintiff had among other things, accessed computer files concerning the drug trafficking investigation without authorization. See Teran Decl. ¶¶ 10, 12.

32. By telephone from his office in Queens, New York, Deputy Inspector Scollan informed plaintiff that the Department would pay plaintiff for July 8, 2004. See Pl. Tr. 49:1-10, Exhibit "2." However, plaintiff informed Captain Scollan that he did not want to be paid for the day. See id.

33. In or around August 2004, Mr. Nieves-Diaz was terminated from his employment with the NYPD, was after being found guilty of Grand Larceny and possession of a duplicate NYPD shield at a Departmental trial. See Teran Decl. ¶ 29.

34. On September 7, 2004, Sgt. Teran interviewed plaintiff under the provisions of the NYPD patrol guide with a union representative present concerning his contacts

with the subjects of the drug trafficking investigation and whether or not plaintiff accessed the confidential computer files. See Teran Decl. ¶ 30.

35. At the interview, plaintiff denied, among other things, that he accessed computer files concerning the drug trafficking investigation on November 28, 2003. See id. at ¶ 31.

36. As a result of plaintiff's statements at the official interview on September 7, 2004, and the paper documentation the NYPD had in its possession concerning plaintiff's activities surrounding the drug trafficking investigation, plaintiff was suspended without pay effective September 7, 2004. See Operations Unit, Report of Suspension, dated September 7, 2004, Exhibit "A" to the Sullivan Decl.

37. On September 9, 2004 and October 26, 2004 plaintiff was served with five charges and specifications. Specifically, plaintiff was charged with: (1) interfering with an IAB investigation by speaking with Nieves-Diaz concerning the investigation in November 2003; (2) wrongfully divulging official department business by speaking with Nieves-Diaz concerning the investigation in November 2003; (3) making false and misleading statements at the Official interview on September 7, 2004; (4) using a department vehicle without permission on November 28, 2003; and (5) accessing IAB computer files with out permission or authority on November 28, 2003. See Charges and Specifications, annexed as Exhibits "B" and "C" to the Sullivan Decl.

38. On February 1 and 2, 2005, a hearing was held on these disciplinary charges.

39. On June 1, 2005, plaintiff was found guilty of wrongfully divulging official department business to Nievas-Diaz and accessing computer files without permission or

authority in November 2003. See Disposition of Charges, annexed as Exhibit "D," to the Sullivan Decl. As a penalty, plaintiff received 20 lost vacation days. See id.

40. Plaintiff retired from the force in August 2006 after 20 years of service.

## C. Plaintiff's Claims.

41. In the Complaint, plaintiff alleges that his constitutional rights were violated because he should have been afforded an attorney or union representative when Agent Hosey and Sergeant Teran spoke with him on July 8, 2004. See Compl. ¶ 33, Exhibit "1" to the Walker-Diallo Decl.

42. However, plaintiff admitted at the deposition that on July 8, 2004, he was not informed that he was under arrest nor did defendants prevent him from leaving. See Pl. Tr. 43:6-7; 46:20-47:9, Exhibit "2."

43. Plaintiff testified that on July 8, 2004 he was not informed that he was the subject of an official NYPD investigation. See id. at 50:23-25.

44. While plaintiff testified that he did not get paid for July 8, 2004, plaintiff admitted that Scollan offered to pay him for the day but plaintiff refused. See id. at 49:1-10.

45. Plaintiff also testified that defendants conspired to place him on modified duty for false charges relating to a "domestic incident." See id. at 49:10-18.

46. Plaintiff further testified that he believes his co-workers treated him differently as a result of July 8, 2004. See Pl. Tr. 84:5-10, Exhibit "2.". However, plaintiff admitted that he voluntarily informed these same co-workers that he was questioned by the FBI and IAB. See id. Plaintiff admitted that he did not know whether any of the defendants spoke with his co-workers concerning what happened on July 8, 2004. See id. at 84:11-15.

47. Plaintiff also testified that he believes he was placed on modified duty because he refused to assist the Department by placing a call to Mr. Nieves-Diaz, who was later terminated a month later in August 2004 for misconduct. See Pl. Tr. 49:22-24; Exhibit "4" to the Walker-Diallo Decl.

48. At his deposition, the only basis that plaintiff gave for believing that his constitutional rights were violated was that "these people…have college degrees. All I have is a high school education, and I knew that." See Pl. 50:4-8, Exhibit "2."

Dated:   New York, New York
         April 15, 2008

                                        **MICHAEL A. CARDOZO**
                                        Corporation Counsel of the
                                          City of New York
                                        Attorney for Defendants
                                        100 Church Street, Room 2-140
                                        New York, New York 10007
                                        Telephone: (212) 788-0868
                                        Email: cwalker@law.nyc.gov

                                    By: _____
                                        Carolyn Walker-Diallo
                                        Assistant Corporation Counsel

TO:   **CRONIN & BYZCEK**
      1981 Marcus Avenue
      Lake Success, NY 11042
      Attn: Rocco Avallone, Esq.

07 Civ. 3085 (SAS) (GWG)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LISSANDER DONES,

                         Plaintiff,

- against -

THE CITY OF NEW YORK, et al.,

                         Defendants.

**DEFENDANTS' 56.1 STATEMENT OF UNDISPUTED FACTS**

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-140
New York, N.Y.  10007-2601

Of Counsel:  Carolyn Walker-Diallo
Tel: (212) 788-0868

NYCLIS No. 2007-014884

*Due and timely service is hereby admitted.*

New York, N.Y. ................................., 2008

Signed: ................................

Attorney for ................................