*PDO2O1O5.TXT*

176

1                    Teran - Direct

2            COMM. VINAL:  Show it to the witness.

3       Q    Do you recognize what I'm showing you?

4       A    Yes.

5       Q    What is it?

6       A    A printout of the E-ZPass usage for

7 Department Vehicle 169.

8       Q    Is that a fair and accurate

9 representation of the printout that you received from

10 Captain – I'm sorry, what was his name?

11      A    Mavricos.

12      Q    Mavricos?

13      A    Yes, it is.

14      Q    Did you use that printout as part of

15 your investigation?

16      A    Yes.

17           MS. BAPTISTE:  At this time, I ask that

18   the E-ZPass records be entered into evidence as

Page 251

PDO20105.TXT

19    Department's Exhibit No. 5.

20        COMM. VINAL:  The date of November 28,

21    2003?

22        MS. BAPTISTE:  Yes.

23        COMM. VINAL:  Voir dire, Mr. Karasyk?

24        MR. KARASYK:  Yes.

25 VOIR DIRE EXAMINATION


(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-5235

D


177

1            Teran - Voir Dire

2 BY MR. KARASYK:

3        Q    The document you have in your hand, is

4 that what you received from Captain Mavricos?

5        A    Yes.

6        Q    It does not have any heading on it in

7 any way, shape or form, does it?

8        A    No.

9        Q    It doesn't say what it is?

Page 252

PD020105.TXT

10      A   No.

11      Q   Do you know where this document came

12 from?  Do you know who generated this document?

13      A   No, I don't.

14      Q   You have no idea who printed this

15 document up, do you?

16      A   No.

17      Q   You don't know if it came from E-ZPass,

18 or it was just printed on a computer printer, do you?

19          Yes or no?

20      A   What is your question?

21      Q   Do you know whether this document was

22 received from E-ZPass, or just printed on a printer?

23          Are there any identifying marks on this

24 document that say it came from E-ZPass, the official

25 E-ZPass records?


       (212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-5235

□

                        178

                    Page 253

*PD020105.TXT*

1                    *Teran - Voir Dire*

2        A    *It's a Department vehicle, Department*

3 *E-ZPass.*

4        Q    *I'm not asking you that.*

5             *I'm asking about the document, the piece*

6 *of paper that you are holding.*

7        A    *It's not from E-ZPass.*

8        Q    *You don't have any idea where this*

9 *information came from that is on this document, do*

10 *you?*

11           *MS. BAPTISTE:  Objection.  The witness*

12    *already testified that he knows exactly where it*

13    *came from.*

14           *MR. KARASYK:  This is –*

15           *COMM. VINAL:  One second.*

16           *The question is the pedigree of the*

17    *document, where the information on it originated*

18    *from, from E-ZPass, or through some other source.*

19        Q    *Do you know where the information for*

20 *this document came from?*

21        A    *A Department computer.*

*Page 254*

*PDO2O1O5.TXT*

22    Q    Were you present when it was printed?

23    A    No.

24    Q    Were you present when it was obtained?

25    A    No.


(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-5235

*0*


179

1                Teran - Voir Dire

2    Q    Your testimony is this document came

3 from a Department computer; is that what you are

4 testifying to?

5    A    Yes.

6    Q    And where did the information from this

7 document, contained in this document, from that

8 Department computer, come from?

9    A    I don't understand the question.

10    Q    How did the Department computer get that

11 information; do you have any idea?

12    A    No.

Page 255

*PDO2O1O5.TXT*

13      Q    You just know that this is a blank sheet

14 of paper, with no heading on it, no date as to when

15 it was generated, or where it was generated from, and

16 you know it came from a Department computer; is that

17 correct?

18      A    Yes.  Captain Mavricos, the day of his

19 Patrol Guide hearing –

20      Q    Gave it to you?

21      A    Yes.

22      Q    Said, "Here is the E-ZPass thing"?

23      A    Yes.

24      Q    You have no idea how he got it, where he

25 got it, and what the basis of the information printed

*ロ*

180

1               Teran - Voir Dire

2 on this document came from?

3      A    You are asking three different

*Page 256*

PD020105.TXT

4 questions.

5           Are you asking me what the document –

6      Q   Do you have any idea where Mavricos got

7 it from?

8      A   No.

9      Q   Do you have any idea where the

10 information written on this document came from?

11     A   From a computer.

12     Q   Okay.

13          Do you have any information where that

14 computer got the information from?

15     A   No.

16     Q   No idea?

17     A   I can't answer that.  I don't know.

18     Q   The sum total of this document is that

19 Mavricos gave this blank sheet of paper to you and

20 said, "Here is the E-ZPass record"; is that correct?

21     A   Yes.

22          MR. KARASYK:  Objection.

23          There is no foundation whatsoever laid

24    for this document.

Page 257

*PD020105.TXT*
25          COMM. VINAL:  Ms. Baptiste?


(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-5235

□


181

1

2          MS. BAPTISTE:  Again, your Honor,

3    Commissioner, it is clear that this investigator

4    was made clear of the specific date, September 7,

5    2004, the same date the Respondent had his

6    official interview, that the Captain, as part of

7    the investigative team investigating Detective

8    Dones, was the one who went and obtained from a

9    specific group that handled the printouts of

10    Department E-ZPass records, Captain Mavricos

11    obtained that information as part of an

12    investigative team –

13          MR. KARASYK:  Counsel is testifying

14    here.  Counsel is testifying.  The testimony

15    doesn't come from counsel.

*Page 258*

PDO2O1O5.TXT

16          COMM. VINAL: It's all argument.

17          Go ahead, finish your argument.

18          MS. BAPTISTE: The testimony that has

19    already been given indicates that the Sergeant

20    received that information from the Captain. He

21    indicated the date.

22          He indicated that he relied on that

23    information as part of an investigative team with

24    Captain Mavricos.

25          Again, your Honor, as part of an

(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-5235

□

182

1

2    investigative team, one investigator is allowed

3    to rely on the investigative procedures and steps

4    of another member of the team.

5          He outlined exactly what he did in

6    obtaining that information.

Page 259

*PD020105.TXT*

7        *He relied on the information given to*

8        *him about the document from Captain Mavricos that*

9        *these were the E-ZPass records from the car*

10       *assigned to Detective Dones and Detective*

11       *Clohessy.*

12           *He can rely on that information, when*

13       *the date was obtained, and where it came from.*

14           *COMM. VINAL:  You are offering these*

15       *records.  He stated that he got it from the*

16       *Captain, Captain Mavricos.*

17           *The Department is offering this document*

18       *for the truth of what is in the document, that*

19       *these entries are accurate with regard to Car 169*

20       *and where the E-ZPass in that car was used?*

21           *MS. BAPTISTE:  Yes.*

22           *COMM. VINAL:  Is that correct?*

23           *MS. BAPTISTE:  Yes.*

24           *COMM. VINAL:  As you are aware, E-ZPass*

25       *is not a departmental arm, correct?*

*PDO2O1O5.TXT*

*183*

1

2          MS. BAPTISTE:  Yes.

3          COMM. VINAL:  Apparently – and I say

4     "apparently" based on the witness' testimony

5     here – in terms of where he got this printout,

6     that the Car Coordinator on Hudson Street had

7     some ability to access E-ZPass records and come

8     up with a computer printout.

9          MS. BAPTISTE:  Yes.

10         COMM. VINAL:  We don't know how that is

11    done.  The witness doesn't know how it's done.

12         MS. BAPTISTE:  He doesn't have

13    information about that.

14         COMM. VINAL:  That is our problem here.

15         When an E-ZPass – and I think this is

16    common knowledge – is in a car, and the car goes

17    through a toll booth of some type, a computer

18    record, an electronic record, is thereupon

*Page 261*

*PD020105.TXT*

19    created that that car went through that E-ZPass

20    toll at a certain date, certain time.

21          What we are missing here is the

22    communication from E-ZPass to the Department in

23    terms of the Car Coordinator at Hudson Street

24    that you are referring to, how this record is

25    generated, whether it reflects E-ZPass records

(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-523!

ロ

184

1

2    that are generated to the Department.

3          I would rule differently if it had on

4    the top "E-ZPass," the plate number, and all the

5    information indicating dates, and tolls and such,

6    that would indicate that this is an official

7    E-ZPass business record.

8          We don't have it.

9          This is a departmental record that the

*Page 262*

PD020105.TXT

10    witness says he is looking at.  I don't know how

11    that record was created from E-ZPass records.

12           We have a chain of custody, so to speak

13    here, in terms of from E-ZPass in some manner to

14    the Car Coordinator, I assume this is the

15    Internal Affairs overall Car Coordinator.

16           THE WITNESS:  Yes.

17           COMM. VINAL:  This person is in charge

18    of the fleets, so to speak?

19           THE WITNESS:  Yes.

20           COMM. VINAL:  And in some manner, the

21    Car Coordinator generates a printout that

22    reflects E-ZPass usage of cars assigned to IAB.

23    We don't know how that occurs.

24           The witness indicated that.

25           We have E-ZPass to the Car Coordinator,


(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-5235

0

*PDO2O1O5.TXT*

1

2    to the Captain, and then through the witness.

3              I have no problem with a departmental

4    record.  E-ZPass is an outside agency.

5              At this point, no proper foundation has

6    been laid for the admissibility of this record in

7    evidence, and I will afford the Department an

8    opportunity to call a witness to so testify,

9    perhaps the Car Coordinator.

10             Do you know who that is?

11             Can you attach a name to that person?

12             THE WITNESS:  I believe it's Paul –

13    John Corr.

14             COMM. VINAL:  Perhaps that individual

15    can enlighten us as to how this document is

16    created.

17             We have to establish that it accurately

18    reflects the actual E-ZPass usage based on

19    E-ZPass information.  They are the ones who take

20    the information from E-ZPass.

21             At this point, I'm not going to allow

*Page 264*

PDO2O1O5.TXT

22    the document into evidence.

23        There is no proper foundation for the

24    reliability of the record.

25        You can proceed to ask the witness


(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-523!

◻


186

1            Teran - Direct

2    further questions.

3 CONTINUED DIRECT EXAMINATION

4 BY MS. BAPTISTE:

5    Q    Turning your attention to July 8, 2004,

6 were you present for an interview of the Respondent,

7 Detective Dones, by Federal Agent Kenneth F. Hosey?

8    A    Yes.

9    Q    Where did that interview occur?

10    A    Within the confines of the 46th

11 Precinct.  I believe it's 1859 Loring Place, Bronx,

12 New York, in front of Detective Dones' residence.

Page 265

*PDO2O1O5.TXT*

13    Q    Who organized and made the decision to

14 interview Detective Dones that way at his home?

15    A    Special Agent Hosey was conducting the

16 interview.  That's where he decided to do the

17 interview, at his residence.

18    Q    He was the one in charge, he is the one

19 who orchestrated the interview, correct?

20    A    Yes.

21    Q    Who else was present during the

22 interview?

23        COMM. VINAL:  Let's start with how the

24    people got there.

25        We are moving to the interview, as


(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-5235

ø



187

1        Teran - Direct

2    opposed to the planning for the interview.

3    Q    Were you privy to the decision, or

*Page 266*

PDO20105.TXT

4 planning on how to interview him at his home?

5      A    To the best of my recollection, Special

6 Agent Hosey stated, on such and such a date we are

7 going to interview Detective Lissander Dones at his

8 residence.

9      Q    So a decision had been made to go

10 interview him, and then you were informed?

11      A    Yes.

12      Q    Do you not understand the question?

13      A    I'm not getting it.

14          We are working as a team, it's a team

15 effort, you know.

16          COMM. VINAL:  Was there a specific need

17   regarding Hosey's proposal to conduct this

18   interview?

19          THE WITNESS:  I don't know.

20          If you would, the Agent would get in

21   contact with me and tell me we are going to

22   interview this person today.

23      Q    Is that what happened?

24      A    Yes.

Page 267

*PDO2O1O5.TXT*
25      Q    Federal Agent Hosey contacted you and


(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-523!

a


188

1                    Teran - Direct

2 told you when they were going to interview him?

3        A    Yes.

4        Q    He also was the one who told you where

5 they were going to interview him?

6        A    Yes.

7        Q    So Hosey came up with the plan and

8 informed you of it?

9        A    Yes, if you want to call it that.

10            It was a plan, a decision that was made

11 by Special Agent Hosey to interview Detective Dones

12 on that specific date, and at his residence.

13       Q    And after that decision was made, was

14 there any other conversation or planning prior to

15 actually going to the interview with Federal Agent

*Page 268*

*PDO20105.TXT*

16 Hosey?  Did you have another conversation with him?

17      A    We would meet him there.

18      Q    Okay.

19      A    We would meet him there, at Detective

20 Dones' residence.

21      Q    So who was present on July 8, 2004, for

22 the interview of Detective Dones?

23      A    Captain Scollan, Lieutenant Mejia,

24 Sergeant Morton, Special Agent Hosey, and myself.

25      Q    Approximately what time did you get to

(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-5235

a

189

1                    Teran - Direct

2 Detective Dones' address?

3      A    It was early in the morning.  The exact

4 time, I don't recall the exact time.

5      Q    Can you approximate the time?

6      A    6:00.  6:00 in the morning, 6:30 in the

*Page 269*

*PDO2O1O5.TXT*

7 morning.

8       Q   At that time, was there any plan or

9 intention of arresting Detective Dones?

10      A   No.

11      Q   Was Detective Dones in custody at the

12 time the interview took place?

13      A   No.

14      Q   Describe in detail the conversation that

15 occurred.

16      A   Special Agent Hosey was conducting the

17 interview, was the primary interviewer on this.

18            I stood alongside Special Agent Hosey,

19 and we were speaking with Detective Dones, and just

20 asking him questions regarding his contact with

21 Detective Louis NievesDiaz.

22      Q   And what, if anything, did he indicate

23 about his contact with Detective Louis NievesDiaz?

24      A   He had stated that he had spoken with

25 Detective Louis NievesDiaz about the incident

PDO20105.TXT

*o*

190

1                    Teran - Direct

2 involving the arrest of Julio Vasquez.

3        Q    Did he indicate whether he knew that

4 NievesDiaz was a member of the Internal Affairs

5 Bureau?

6        A    No.

7              He acknowledged that he wasn't.  Louis

8 Nieves isn't part of IAB.

9        Q    Just to clarify this, Detective Dones

10 clarified that who wasn't a member of the Internal

11 Affairs Bureau?

12        A    That Louis NievesDiaz was not.

13        Q    Right.

14              And did Detective Dones make any

15 statements regarding accessing the computer?

16        A    Yes.

17        Q    What, if anything, did he specifically

18 say about accessing the computer system, and why?

Page 271

PD020105.TXT

19    A    I recall him stating that he did access

20 the computer system regarding the incident involving

21 Julio Vasquez, and that he did it out of curiosity.

22    Q    What, if anything, did he say about

23 giving him computer access code to anyone, or whether

24 someone had accessed the information under his code?

25    A    I recall him saying that no, no one was

[212] 349-9692 TANKOOS REPORTING COMPANY [516] 741-5235

□

191

1                    Teran - Direct

2 privy to that information, and that no, he didn't

3 give that information out to anyone.

4    Q    When you say privy to that information,

5 you are talking about his computer code?

6    A    Yes.

7    Q    What, if anything, did he state about

8 his involvement in the Vasquez case; meaning did he

9 know he was involved in the case, in an

Page 272

*PDO2O1O5.TXT*

10 investigation?

11          COMM. VINAL:  I have allowed answers

12     without questions.

13          What was the question?

14          Did he observe Special Agent Hosey or

15     anyone else ask the Respondent?

16          This was not tape-recorded?

17          THE WITNESS:  No it wasn't.

18     Q    If you recall, what questions was

19 Federal Agent Hosey asking Detective Dones?

20     A    The exact question?

21     Q    A summary of the questions that he

22 asked.

23     A    Regarding his connection with Julio

24 Vasquez?

25     Q    Yes.


(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-523⁢

*o*



192

*PD020105.TXT*

| | |
|---|---|
| 1 | *Teran - Direct* |

2     A    *I believe that they worked together.*

3          *I believe that Detective Vasquez*

4 *trained – Dones stated that he had trained him.*

5     Q    *That was one of the things that you*

6 *learned from the interview?*

7     A    *Yes.*

8     Q    *Did Dones indicate – at that time, did*

9 *he indicate that he was on duty at the time he*

10 *accessed the computer?*

11          *COMM. VINAL: Answers make sense in the*

12    *context of questions.*

13          *I haven't heard you ask what question*

14    *was asked –*

15          *THE WITNESS: Can I refresh my*

16    *recollection?*

17          *COMM. VINAL: One second.*

18          *That is why I interjected myself.*

19          *You haven't asked the witness once what*

20    *question was asked, just what the Respondent*

21    *said.*

*Page 274*

*PDO2O1O5.TXT*

22          *If he volunteered something without a*

23    *question being asked, the witness can testify to*

24    *that, too.*

25          *I need a context.*


*(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-523*

*ø*


*193*

1              *Teran - Direct*

2          *You did not ask what questions were*

3    *asked.*

4      *Q    Is there anything that can refresh your*

5  *recollection as to what questions were asked by –*

6          *COMM. VINAL:  Let me interject one*

7    *second.*

8          *As you sit here today, do you have a*

9    *present recollection of this interview?*

10          *THE WITNESS:  Yes.*

11          *COMM. VINAL:  Okay.*

12          *You can testify from your present*

*Page 275*

*PDO2O1O5.TXT*

13    *recollection.*

14            *If you need to have it refreshed, we can*

15    *do that, too.*

16            *THE WITNESS:  Can I have it refreshed?*

17            *COMM. VINAL:  Yes.*

18            *This is what we will do.*

19            *There is still cross-examination to go,*

20    *further testimony.*

21            *I think it makes the best sense to*

22    *adjourn at this point in time.  He can review the*

23    *statement, and we can begin testimony on it*

24    *tomorrow morning, unless counsel objects.*

25            *MR. KARASYK:  Commissioner, I would just*


*(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-523*

*0*


*194*

1                *Teran - Direct*

2    *ask, if the witness has indicated that he wishes*

3    *to refresh his recollection, I ask whatever he is*

*Page 276*

*PDO2O1O5.TXT*

4    going to use to refresh his recollection, he let

5    us see now.

6              If it's something different that I don't

7    have, that will be discoverable, I would like to

8    see it.

9              If it is no more than – I don't know

10    what it is.

11              COMM. VINAL:  You have a document there?

12              MR. KARASYK:  A group of documents?

13              COMM. VINAL:  What were you going to use

14    to refresh your recollection?

15              THE WITNESS:  Whatever discovery I

16    turned over to counsel.

17              I believe it was the interview.

18              COMM. VINAL:  Did you prepare a report

19    regarding this interview ?

20              THE WITNESS:  No.

21              COMM. VINAL:  Who did?

22              THE WITNESS:  Special Agent Hosey.

23              COMM. VINAL:  Did anyone from this

24    department prepare any report regarding this

*Page 277*

*PDO2O1O5.TXT*

25    *interview?*


(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-523*

*□*


195

1                    *Teran - Direct*

2            *THE WITNESS:  No.*

3            *COMM. VINAL:  Any notes taken by anyone*

4    *at the interview, or after the interview?*

5            *THE WITNESS:  No.*

6            *COMM. VINAL:  Informal notes?*

7            *THE WITNESS:  No.*

8            *COMM. VINAL:  Any members of the service*

9    *who were present?*

10            *THE WITNESS:  No.*

11            *COMM. VINAL:  Any members of the service*

12    *who were present in front of the Respondent's*

13    *house?*

14            *THE WITNESS:  No.*

15            *COMM. VINAL:  Is there any Department*

*Page 278*

*PD020105.TXT*

16    *record at all that this interview took place?*

17        *THE WITNESS:  No.*

18        *COMM. VINAL:  I guess what I'm really*

19    *asking is, since this was an investigative event,*

20    *clearly, was someone supposed to prepare*

21    *something to indicate this had happened, memo*

22    *book entries, activity log entries, or the IAB*

23    *equivalent of activity logs that this event took*

24    *place in front of the Respondent's presence?*

25        *THE WITNESS:  No.*

*(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-5235*

*□*

*196*

1        *Teran - Direct*

2        *The reason behind this was we were*

3    *conducting a joint investigation with the FBI,*

4    *and Special Agent Hosey was in charge of*

5    *conducting the interviews and producing the*

6    *paperwork relative to the interviews, and that is*

*Page 279*

PD020105.TXT

7    why we were told not to --

8         COMM. VINAL:  The FBI was requesting

9    that the Department not create paperwork, since

10    they were conducting an investigation?

11         THE WITNESS:  The United States District

12    Attorney's Office, it was in the FBI's hands to

13    conduct the investigation, and they were in

14    charge of it.

15 BY MS. BAPTISTE:

16        Q    Did someone memorialize this interview?

17        A    Yes.

18        Q    Who memorialized this interview in some

19 way?

20        A    Special Agent Hosey.

21         COMM. VINAL:  Other than that, are you

22    aware of any other record memorializing the

23    interview?

24         THE WITNESS:  No.

25         COMM. VINAL:  The witness indicated he

PDO20105.TXT

197

1

2   will read Special Agent Hosey's report.

3        Did you receive that?

4        MR. KARASYK:  Yes.

5        COMM. VINAL:  I think we should break

6   for him to read it, and give the Assistant

7   Advocate the opportunity to possibly contact, as

8   indicated earlier, the fact that the exhibit

9   offered as Department's 5 for identification, the

10   E-ZPass records, as they were referred to

11   regarding Vehicle 169, are not in evidence.

12        I want to afford the Advocate an

13   opportunity, if possible, to get another witness

14   to put those documents in evidence.

15        It makes the most sense to break at this

16   point in time.

17        As Mr. Karasyk requested, he is aware of

18   the only document that is going to be reviewed

*PDO2O105.TXT*

19    regarding this interview, Special Agent Hosey's

20    report.

21            THE WITNESS:  Yes.

22            Commissioner, if I may?

23            COMM. VINAL:  Yes.

24            THE WITNESS:  From what I remember of

25    the interviews, basic information that Hosey was


(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-523͡

◻


198

1

2    asking him, "How do you know this guy, Louis

3    NievesDiaz?  Were you contacted" –

4            COMM. VINAL:  You indicated that you

5    have a recollection of this event occurring.  You

6    can testify to your present recollection.

7            You can use his report to help refresh

8    your present recollection as to the questions

9    asked, and the answers given by the Respondent in

*Page 282*

PDO2O1O5.TXT

10    the course of that particular interview.

11          You have not had an opportunity to do

12    that, I gather?

13          THE WITNESS:  What is that?

14          COMM. VINAL:  Have you had an

15    opportunity to interview Special Agent Hosey's

16    report recently?

17          THE WITNESS:  Recently?

18          COMM. VINAL:  Yes.

19          THE WITNESS:  I looked at it.

20          I don't want to basically say something

21    that might be wrong.

22          If I can look at it, to just refresh my

23    recollection, it would be great.

24          I can also testify to the best of my

25    knowledge of what I remember.

D

199

Page 283

*PDO20105.TXT*

1

2          COMM. VINAL:  I will afford you an

3     opportunity to have an opportunity to review it.

4          Ms. Baptiste, after this witness is

5     concluded, are you going to call any other

6     witnesses?

7          MS. BAPTISTE:  Just the Car Coordinator.

8          COMM. VINAL:  Apart from that witness?

9          MS. BAPTISTE:  No.

10          COMM. VINAL:  Mr. Karasyk, you have

11     witnesses to call, I believe, in addition to the

12     Respondent?

13          MR. KARASYK:  Just the Respondent.

14          COMM. VINAL:  Okay.

15          Why don't we adjourn at this point until

16     tomorrow morning at 10:00 a.m.

17          MS. BAPTISTE:  Thank you.

18          MR. KARASYK:  Thank you.

19          (Time noted:  4:00 o'clock p.m.)

20

21

*Page 284*

*PDO2O1O5.TXT*

22

23

24

25

(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-5235

*0*

200

1

2                    *I N D E X*

3
  WITNESS:  MICHAEL CLOHESSY
4                                VOIR
  EXAMINED BY    DIR. CROSS   REDIR.   RECR.   DIRE
5
  Ms. Baptiste      8          38
6
  Mr. Karasyk        21              44
7

8 WITNESS:  GREGORY GARLAND
                                VOIR
9 EXAMINED BY    DIR. CROSS   REDIR.   RECR.   DIRE

10 Ms. Baptiste    49

11 Mr. Karasyk        57

12
  WITNESS:  DONALD P. MOUNTS
                    Page 285

PDO2O105.TXT

```
13                              VOIR
   EXAMINED BY   DIR. CROSS  REDIR.  RECR.  DIRE
14
    Ms. Baptiste   67        101
15
    Mr. Karasyk        92        107
16

17 WITNESS:  FRANCIS TERAN
                              VOIR
18 EXAMINED BY   DIR. CROSS  REDIR.  RECR.  DIRE

19 Ms. Baptiste   125
             161
20            186

21 Mr. Karasyk                    152
                         177
22

23

24

25
```

(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-523!

"

201
```
1

2         E X H I B I T S

3
                    FOR  IN
                  Page 286
```

PDO2O1O5.TXT

| 4 | DEPARTMENT'S | DESCRIPTION | ID. | EV. |
|---|---|---|---|---|
| 5 | 1 | List of computer codes | 70 | |
| 6 | 2 | Usage log | 89 | |
| 7 | 3 | Phone records | 140 | |
| 8 | 4 | Printout of computer checks | 151 | 161 |
| 9 | | | | |
| 10 | 5 | Printout of E-ZPass usage | 175 | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |
| 23 | | | | |
| 24 | | | | |

Page 287

*PD020105.TXT*

25


(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-523

*0*


202

1

2          C E R T I F I C A T E

3

4          I, STEVEN KLEIN, a Notary Public of the State

5 of New York, do hereby certify:

6          That the testimony in the within proceeding

7 was held before me at the aforesaid time and place;

8          That said witness was duly sworn before the

9 commencement of the testimony, and that the testimony

10 was stenographically taken by me, then transcribed

11 under my supervision, and that the within transcript

12 is a true record of the testimony of said witness.

13          I further certify that I am not related to any

14 of the parties to this action by blood or marriage,

15 that I am not interested directly or indirectly in

*PD020105.TXT*

16 the matter in controversy, nor am I in the employ of

17 any of the counsel.

18      IN WITNESS WHEREOF, I have hereunto set my

19 hand this    day of            , 2005.

20

21

            STEVEN KLEIN
22

23

24

25


        (212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-5235


*Page 289*