POLICE DEPARTMENT

*The City of New York*

June 1, 2005

MEMORANDUM FOR:    POLICE COMMISSIONER

Re:    Detective Lissander Dones
Tax Registry No. 885547
Housing Borough Bronx/Queens
Disciplinary Case No. 80292/04
----------------------------------------

The above-named member of the Department appeared before me on February 1 and

February 2, 2005, charged with the following:

1. Said Detective Lissander Dones, assigned to Internal Affairs Bureau, on or about November 26, 2003 and November 28, 2003 did wrongfully and without just cause prevent or interfere with an official Department investigation.

P.G. 203-10, Page 1, Paragraph 2(d) - PROHIBITED CONDUCT

2. Said Detective Lissander Dones, assigned as indicated in Specification No. 1, on or about November 26, 2003 and November 28, 2003, wrongfully divulged or disclosed official Department business.

P.G. 203-10, Page 1, Paragraph 3 - PROHIBITED CONDUCT

3. Said Detective Lissander Dones assigned to the Internal Affairs Bureau, during an official Department investigation, conducted by Lieutenant Ronald Mejia and Sergeant Francis Teran of Internal Affairs Bureau Group #41, on September 7, 2004, pursuant to the provisions of Patrol Guide Section 206-13 did wrongfully make false and misleading statements. *(As amended)*

P.G. 203-08, Page 1, Paragraph 1 - PROHIBITED CONDUCT

4. Said Detective Lissander Dones assigned to the Internal Affairs Bureau, on or about November 28, 2003, while off duty, did wrongfully and without just cause operate a Department

COURTESY  •  PROFESSIONALISM  •  RESPECT

PD 158-151 (Rev. 1)

DETECTIVE LISSANDER DONES                                                    2

vehicle #169 without permission or authority to do so.  *(As amended)*

P.G. 203-05, Page 1, Paragraph 16 - PERFORMANCE OF DUTY - GENERAL
GENERAL REGULATIONS

5.  Said Detective Lissander Dones assigned to the Internal Affairs Bureau, on or about
November 28, 2003, while off duty, did access a Department computer, IAB PRO, and make
unofficial inquiries for non-Departmental purposes.  *(As amended)*

P.G. 219-14, Page 1, Paragraph 2 - DEPARTMENT COMPUTER SYSTEMS
DEPARTMENT PROPERTY

The Department was represented by Natalie Baptiste, Esq., Department Advocate's

Office, and the Respondent was represented by Philip Karasyk, Esq.

The Respondent, through his counsel, entered a plea of Not Guilty to the subject charges.

A stenographic transcript of the trial record has been prepared and is available for the Police

Commissioner's review.

DECISION

The Respondent is found Guilty of Specification Nos. 2 and 5.  The Respondent is found

Not Guilty of Specification Nos. 1, 3 and 4.

EVIDENCE

Introduction

It is not disputed that when the Respondent was first assigned to Manhattan North

Narcotics, Detective Julio Vasquez was designated to train him and at times while the

Respondent was assigned to Manhattan North Narcotics he worked with Detective Louis Nieves

DETECTIVE LISSANDER DONES                                                                           3

Diaz.  In 1995, the Respondent was assigned to Internal Affairs Bureau (IAB) Group 52.  In

2001, the Respondent was assigned to the IAB Group 51 which investigates police

impersonators.


The Department's Case

     The Department called Detective Michael Clohessy, Sergeant Gregory Garland, Detective

Donald Mounts, and Sergeant Francis Teran as witnesses.


     Clohessy, who has been assigned to IAB Group 51 for the past ten years, testified that the

Respondent was assigned as his partner during 2003 and that they worked out of the Bronx

Inspections Unit which has offices inside the 48 Precinct.  Clohessy recalled that he and the

Respondent worked a 3:00 p.m. to 11:00 p.m. tour on November 26, 2003.  They were directed

to respond to a "call out" at the 1st Precinct station house to assist the Manhattan team regarding

arrests of police impersonators.  Clohessy signed out their regular assigned vehicle, number 169,

an unmarked black Chevrolet Impala sedan.  Clohessy testified that this vehicle can only be used

to conduct official IAB business and that only he and the Respondent possessed keys to the

vehicle.

     They were inside the detective squad area of the 1st Precinct station house, with Detective

Minaya, when they learned of an unrelated  "call out."  Other members of Group 51 responded to

this "call out" which, although no names were mentioned, related to the Organized Crime

Investigation Division (OCID) and concerned a police officer impersonation allegation involving

the "rip off" of a drug dealer in Queens.  They were at the 1st Precinct station house all day.

DETECTIVE LISSANDER DONES                                                      4

When they returned to the Bronx Inspections Unit at the end of their tour on November 26, 2003,

Clohessy parked vehicle number 169 in the 48 Precinct parking lot. He and the Respondent left

in their personal vehicles.

Clohessy recalled that he "was RDO (regular day off)" on November 28, 2003, and since

the Respondent was assigned as his partner, the Respondent "would have been RDO that day

also." Clohessy testified that on November 28, 2003, he did not go to the 48 Precinct, he did not

use vehicle number 169, he did not enter the Bronx Inspections Unit and he did not use his IAB-

assigned computer code to access IAB records that day. He never told the Respondent his code

number and he has never used the code number of the Respondent or anyone else to access IAB

records. When he was asked if had ever used his code number to access the records of other IAB

Groups, he answered, "Rarely, if ever."

On cross-examination, Clohessy testified that the entire 1st Precinct detective squad heard

the radio transmission regarding the OCID criminal impersonation "call out." He testified that

although IAB Groups 53 and 56 are also housed in the 48 Precinct station house, "We generally

don't go into other Group's offices." The Respondent is visible to anyone entering the Group 51

office area whenever the Respondent is seated at his desk. He conceded that "it sometimes

occurs" that a Group 51 detective who has not used his personal code number to log onto the

computer will ask a colleague who has logged on to "run info" that only the non-logged detective

is interested in. He also acknowledged that sometimes members assigned to Group 51 forget to

log off the computer after they have completed their work and another detective will "run info"

on the computer without first logging in under their own code number. He sometimes uses his

code number to "scroll logs" on IA PRO "to see what's going on," but that, "I don't scroll for

DETECTIVE LISSANDER DONES                                                                          5

curiosity." He only accesses police impersonation logs because Impersonation Team members

have no reason to access corruption logs, although he knew of no rule which prohibits members

assigned to Group 51 from accessing corruption logs. He never observed the Respondent

violating any IAB procedure. He never noticed any piece of paper on the Respondent's desk

with his code number on it. Clohessy recalled that vehicle number 169 has an EZ pass which is

attached to a velcro strip and can be removed by hand. Vehicle number 169 had previously been

assigned to Detective Minaya. When Minaya was transferred, he gave Clohessy the key to the car

but Clohessy did not know whether Minaya kept a copy of the key.


      Garland, who is assigned to IAB Group 51, testified that he was not aware of any

switching of EZ passes between IAB vehicles and that when he accesses IA PRO, he only uses

his own personal access code. He admitted that he sometimes accesses corruption logs out of

curiosity. He recalled that November 28, 2003 was his regular day off. He admitted that after

November 28, 2003, he accessed the log regarding Detective Julio Vasquez even though it was

not a Group 51 case.

      On cross-examination, Garland testified that sometime in the evening on November 26,

2003, he heard about the "call out" concerning the "rip off" of a drug dealer in Queens and he

learned that a former member of the service named Rachko had been arrested and that Vasquez

was named in the investigation. Garland testified team members were discussing this "call out"

and that when Vasquez name came up during the discussion, the Respondent volunteered, "Julio

Vasquez? I know him. I used to work with him. He broke me in." Garland testified that if a

member assigned to Group 51 forgets to log off the computer after they have completed their

DETECTIVE LISSANDER DONES                                                                6

work, the IA PRO program does not automatically shut down and anyone who then uses the

computer can access IA PRO.    Garland testified that he has a "good opinion" of the Respondent

who has received high evaluations and has no integrity issues.


Mounts, who has been assigned to IAB Group 51 since March, 2001, testified that he is

the LAN Manager and that he is the only person in Group 51 who has an all-access computer

code.  In 2001, he prepared a list of all assigned access codes but, since the Respondent was not

yet assigned to Group 51, the Respondent's code was not on this list and the list was not updated

after the Respondent's arrival at Group 51 to reflect the access code that had already been

provided to the Respondent when he was assigned to Group 52.  Mounts testified that he has

never possessed knowledge of the Respondent's access code number.   Mounts testified that

although IAB has no written procedure regarding IA PRO access, in 2001, he attended an IAB

training program in which the instructor told the class, "Do not go through the system. Access

only your Group's codes."  On November 28, 2003, he worked a 0545 hours to 1400 hours tour

at Group 51.  He was certain that he signed out and left work at 1400 hours.


Teran testified that after Nieves Diaz became a subject in the Vasquez investigation, he

obtained Nieves Diaz' telephone records which reflected that the Respondent had telephoned

Nieves Diaz on November 26 and 27, 2003.  The Respondent then became a person of interest,

but not a subject, regarding the Vasquez investigation.  Teran obtained Group 51's computer

records which reflected that the Respondent's confidential IAB computer access code number

was used on November 28, 2003, from 1414 hours to 1425 hours, to access a number of

DETECTIVE LISSANDER DONES                                                    7

corruption case logs related to the Vasquez investigation (DX 4).

When FBI Special Agent (SA) Hosey informed IAB that he intended to attempt to

interview the Respondent at his residence, it was determined that IAB personnel should be also

be present at this interview.  On July 8, 2004, Captain Scollan, Lieutenant Meija, Sergeant

Morton and Teran drove to the Respondent's residence in several vehicles.  The interview had

already begun when Teran joined the group in front of the Respondent's house.  Teran heard the

Respondent state that he had accessed corruption case logs contained the IA-PRO database out of

curiosity.  Teran testified that this interview was not tape recorded and none of the IAB personnel

who were present took any notes because it was an FBI interview not an IAB interview and they

knew that SA Hosey would prepare a "302" (FBI interview report) memorializing the interview.

Teran recalled that he asked the Respondent "one or two" questions during the interview.

On cross-examination, Teran testified that all members of the service (MOS) assigned to

Group 51 during November, 2003, with one exception, were interviewed and questioned

regarding whether they had seen the Respondent inside or in the vicinity of Group 51's offices on

November 28, 2003.  All responded in the negative.  Two of these MOS were detectives who had

worked day tours at Group 51 and who signed the log "at 1415 hours."  The movement records

reflected that several members of the team worked past 1415 hours, but that they were in the

field, not the office.  He never visited Group 51's offices to establish the layout of the office.

He requested to be allowed to refer to the "302" prepared by SA Hosey in order to recall

what questions the Respondent was asked and what his answers were at the interview in front of

his house on July 8, 2004.  Sergeant Teran acknowledged that SA Hosey's "302" reflected that

the Respondent was asked  "if he ever accessed the NYPD computer system."  He testified that

DETECTIVE LISSANDER DONES                                                                 8

he could not recall whether the Respondent was asked if he had accessed IA PRO on his day off

or whether the Respondent was asked about Vasquez or Nieves Diaz. He testified that since this

interview was not considered to be an Official Department Interview, none of the Patrol Guide

procedures that are mandated at Official Department Interviews were followed. These procedures

were followed at the Official Department Interview conducted on September 7, 2004 (DX 6).


The Respondent's Case

        The Respondent testified in his own behalf.


        The Respondent's testimony regarding the events of November 26, 2003, at the 1st

Precinct station house was consistent with the testimony of Clohessy and Garland. After Garland

mentioned that Vasquez had been arrested, the Respondent tried to telephone Nieves Diaz on

November 26, 2003, to discuss this with him, but he did not speak with Nieves Diaz until the

next day. The Respondent testified that during their telephone conversation on November 27,

2003, he told him that "we had a call out last night" and that Julio Vasquez had been arrested

regarding a "drug rip-off in Queens" along with "some guy named Rachko." The Respondent

did not know anyone named Rachko. He believed that because Vasquez was assigned to

Manhattan North Narcotics and Nieves Diaz was assigned to OCCB Inspections, Nieves Diaz

would be aware of the fact that Vasquez had been arrested.

        With regard to the computer records which showed that the Respondent's confidential

IAB computer access code number was used on November 28, 2003, from 1414 hours to 1425

hours to access corruption case logs related to the Vasquez investigation (DX 4), the Respondent

DETECTIVE LISSANDER DONES                                                                      9

testified that he had not used his code because he did not come into work on November 28, 2003,

since it was his regular day off (RDO).  The Respondent testified that sometimes when a member

assigned to Group 51 uses their confidential code number to access IAB computer records and

fails to log out, a co-worker may access records by using the code number of the member who

was already logged on.  The Respondent also testified that during November, 2003, his

confidential IAB code number was on a piece of paper he had tacked on the bulletin board at his

desk and that someone could have seen this number and used his code number to access the

Vasquez logs on November 28, 2004.  When he was interviewed by IAB and FBI SA Hosey in

front of his residence on July 8, 2004, he was asked if he had ever looked at corruption logs and

he truthfully told them that he had sometimes accessed non-Group 51 logs.  He testified that at

his Official Department Interview on September 7, 2004, he became confused by Teran's

questions regarding what logs he had accessed and what period of time Teran was referencing.

On cross-examination, the Respondent acknowledged that he had not heard or read about

any public announcement about Vasquez arrest via any mass media outlet, such as a newspaper

or a radio or televison newscast.  The Respondent testified that when he telephoned Nieves Diaz

on November 28, 2003 and told him that Vasquez had been arrested, he was conscious that it was

likely that IAB's investigation into Vasquez' activities was continuing.

## FINDINGS AND ANALYSIS

### Specification Nos. 1 and 2

The Respondent is found Guilty of Specification No. 2 because the Respondent admitted

that during a telephone conversation with Nieves Diaz on November 27, 2003, he told him that

"we had a call out last night" and that Julio Vasquez had been arrested regarding a "drug rip-off

in Queens" along with "some guy named Rachko" whom the Respondent did not know

(Transcript page 307). The Respondent acknowledged that he divulged this information to

Nieves Diaz even though the Respondent knew that it was likely that IAB's investigation into

Vasquez' activities was continuing.

The Respondent contended that he had no intent to wrongfully divulge or disclose official

Department business. He asserted that he believed that because Vasquez was assigned to a

narcotics unit and because Nieves Diaz was assigned to OCID Inspections, Nieves Diaz would

likely have already been privy to the fact that Vasquez had been arrested. However, the

Respondent implicitly admitted in his testimony that he disclosed to Nieves Diaz the fact that

Vasquez had been arrested (and the other confidential information cited above), without first

ascertaining whether Nieves Diaz was already aware of any of these facts. Nieves Diaz had no

right to this information and, as far as the Respondent knew, no announcement that Vasquez had

been arrested had been broadcast or otherwise disclosed through any mass media. The

Respondent's (and Clohessy's) testimony that the "drug rip off " became generally known to

non-IAB MOS on November 26, 2003, because members of the 1st Precinct Detective Squad

overheard that IAB was responding to a Queens "call out" regarding a police impersonation

"drug rip off," is irrelevant because no subject names were mentioned in this call out. The

Respondent admitted that he first learned that Vasquez was one of the subjects of the "call out"

later that day when he overheard Garland mention Vasquez' name.

However, the Respondent is found Not Guilty of Specification No. 1 because the

Department presented no evidence that the Respondent's disclosures to Nieves Diaz interfered

DETECTIVE LISSANDER DONES                                                          11

with or in any way affected, much less compromised or prevented, IAB's continuing

investigation into Vasquez' activities.


Specification No. 3

      This Specification charges that the Respondent made false and misleading statements at

his Official Department Interview on September 7, 2004.  In a Bill of Particulars that was

provided to the Respondent by the Assistant Department Advocate after he was served with this

charge, the Department gave notice to the Respondent that the false and misleading statements he

is alleged to have made at his Official Department Interview consisted of the Respondent's

answers "throughout his Official Department Interview that he could not remember, or could not

recall telling investigators that he had accessed the IA-Probe (sic) database, and did so out of

curiosity, to review information about the investigation into Detective Julio Vasquez."

      It is not disputed that the Respondent was interviewed in front of his residence by FBI

Special Agent (SA) Hosey in the presence of Captain Scollan, Lieutenant Meija, Sergeant

Morton and Sergeant Teran on July 8, 2004.  Although the Bill of Particulars does not

specifically cite to this interview, the Assistant Department Advocate stated that the phrase

"telling investigators" alludes to this outdoor interview.  In addition, although the Bill of

Particulars does not specifically cite the date that the Respondent was alleged to have accessed

the IA PRO database out of curiosity to review information about the investigation into Detective

Vasquez, the Assistant Department Advocate stated that the Bill of Particulars should have cited

the date of November 28, 2003.

      Thus, to prove that the Respondent made false and misleading statements at his Official

DETECTIVE LISSANDER DONES                                                    12

Department Interview about what he said at the July 8, 2004 interview, the Department was

required to first establish that the Respondent specifically stated on July 8, 2004, that he had

accessed the IA-PRO database on November 28, 2003, out of curiosity, to review corruption logs

about the investigation into Detective Vasquez.   The only evidence offered by the Department to

establish what questions the Respondent was asked and what answers he provided, was the

recollection of Sergeant Teran, since this interview was not tape recorded and none of the IAB

personnel who were present took any notes or in any way memorialized the questions that were

asked and the answers that given were during this interview.[1]

     Since this interview occurred seven months prior to his testimony, Sergeant Teran

admitted, on cross-examination, that he needed to refer to the "302" (FBI interview report)

prepared by SA Hosey in order to recall what questions the Respondent was asked and what

answers he provided (Transcript page 260).  Sergeant Teran then acknowledged that SA Hosey's

"302" reflected that the Respondent was asked  "if he ever accessed the NYPD computer system

(Transcript page 261)."  Based on this testimony, it is not at all clear that SA Hosey specifically

asked the Respondent whether he had accessed the IA-PRO database on November 28, 2003 for

the specific purpose of reviewing the Vasquez corruption logs.  The question of whether SA

Hosey specifically referenced November 28, 2003 and the Vasquez corruption logs in the queries

---

[1] The Respondent asserted that the Department should not be permitted to use any
statements he made during the July 8, 2004 interview against him at this Departmental
disciplinary proceeding because his contractual rights were violated as a result of the manner in
which this interview was conducted.  The Respondent argued that because MOS assigned to IAB
participated in this interview, the interview should have been conducted in accord with the
procedures mandated by Patrol Guide section 206-13 regarding Interrogation of Members of the
Service.  However, since I have found the Respondent Not Guilty of Specification No. 3 on other
grounds, there is no need to address this issue.

DETECTIVE LISSANDER DONES

he posed to the Respondent on July 8, 2004, is crucial since the Respondent acknowledged at his

Official Department Interview (DX 6 Pages 28-29) that he had on occasion accessed non-Group

51 logs contained in IA-PRO database, and at this trial the Respondent acknowledged that he had

accessed logs regarding Vasquez before November 26, 2003 (Transcript page 302), and that after

November 28, 2003, he "might have" accessed logs regarding Vasquez although he was

not certain of this. (Transcript page 309)

The record reflects other problems regarding the July 8, 2004 interview.  Sergeant Teran

candidly admitted that he was not present when the interview commenced and that he does not

know what was said before he joined SA Hosey who was already speaking to the Respondent.

Also, the completeness and accuracy of Sergeant Teran's recollection of this interview must be

questioned because even after he had the opportunity to refresh his recollection by reviewing SA

Hosey's "302," Sergeant Teran candidly admitted that he could not recall whether the

Respondent was asked if he had accessed IA PRO on his day off  (Transcript page 244) or what

SA Hosey had asked the Respondent about Vasquez or Nieves Diaz.

As a result of these factors, the trial record insufficiently establishes precisely what the

Respondent was asked and exactly what the Respondent told SA Hosey on July 8, 2004.


Specification No. 4

The Respondent is found Not Guilty of this charge because the Department offered no

reliable proof that the Respondent while off duty on November 28, 2003 "wrongfully and

without just cause operate(d) Department vehicle #169."  The Department contended that the

Respondent used vehicle number 169 to drive to Nieves Diaz' residence.  Vehicle #169 was

## DETECTIVE LISSANDER DONES

regularly used by the Respondent and his partner, Clohessy, testified that this vehicle can only be used to conduct official IAB business and that only he and the Respondent possessed keys to the vehicle. However, no witness was presented who could testify that the Respondent was observed operating vehicle #169 on November 28, 2003. Although the Department contended that EZ Pass records showed that vehicle #169 had been driven across a toll bridge on November 28, 2003, the Department did not produce an EZ Pass record for this vehicle[2] which could reliably establish that the vehicle had been driven on that date.

Specification No. 5

The Department presented an "exclusive opportunity" case based on Group 51's computer records. These records show that the Respondent's confidential IAB computer access code number was used on November 28, 2003, from 1414 hours to 1425 hours, to access corruption case logs in IAB PRO related to the Vasquez arrest (DX 4). Mounts testified credibly that even he did not know the Respondent's confidential access code and that his code number was never included on any Group 51 list. The Respondent's own testimony established that the Respondent's code number was confidential and, under IAB procedures, was to be used only by him.

Moreover the Respondent's own testimony establishes that he had a strong motive to want to personally access the Vasquez logs on November 28, 2003. As discussed under

---

[2] The Department did offer a summary of the vehicle's toll charges which an unnamed Department employee created after reviewing the EZ Pass records for this vehicle (Department Exhibit 5 for Identification). However, since no witness was presented who could attest to the accuracy of this summary, the reliability of the information contained in this summary could not be established and, as a result, the document was not admitted into evidence.

DETECTIVE LISSANDER DONES

15

Specification No. 2, the Respondent testified that he and Nieves Diaz had a telephone conversation on November 27, 2003, in which they expressed mutual disbelief that Vasquez could have been involved in a "drug rip-off in Queens" resulting in his arrest along with "some guy named Rachko" whom the Respondent had never heard of (Transcript page 307). The Respondent admitted that this was the full extent of his knowledge about the Vasquez arrest on November 27, 2003, and it is clear that both he and Nieves Diaz were extremely interested to know more details about Vasquez alleged involvement in the "drug rip-off" and who Rachko was.

The Respondent's assertion that it was mere coincidence that Vasquez corruption logs were accessed through a Group 51 computer terminal by someone else who had obtained and improperly used the Respondent's confidential code number, the day after he and Nieves Diaz had conversed on the telephone about Vasquez arrest, strains credulity. I find that the Respondent's intense curiosity overcame his better judgment and that he entered his command on his RDO and used his confidential code to access corruption logs in an attempt to obtain information about the Vasquez arrest.

The mere fact that the Department produced no Group 51 member who could testify that he saw the Respondent inside the Group 51 offices on November 28, 2003, does not conclusively establish that the Respondent could not have been there at 1414 hours, the time that the computer records reflect his code was used to log on. Sergeant Teran testified that the Group 51 movement log showed that one Detective should have been inside the Group 51 offices after 1400 hours and that the roll call reflected that Detectives Sirocco and Joholm performed a 1415 tour. However, none of these individuals testified at this trial and their actual whereabouts from 1414 hours to

<u>DETECTIVE LISSANDER DONES</u>                                                                16

1425 hours as well as their ability to view the computer terminal that was accessed using the

Respondent's personal code, can not be presumed.  The computer records presumptively

establish the Respondent's use of a terminal inside his command from 1414 hours until 1425

hours on November 28, 2003, and these records refute his unsupported trial testimony that he did

not enter his command that day (Transcript page 309).

      The Respondent offered two purely speculative scenarios in an attempt to explain how

someone could have used the Respondent's confidential code number to access the Vasquez'

logs.  He and Clohessy testified that when someone assigned to Group 51 uses their confidential

code number to access IAB computer records and then either fails to log out or is asked by a co-

worker to access other records, the code of the member who logged on will be reflected as having

performed the records search.  Yet the Respondent offered no concrete explanation as to how this

speculative scenario provided a plausible explanation for the specific access entries regarding

November 28, 2003, that are reflected in the Group 51 computer records in evidence (DX 4).

      The Respondent also asserted that he had written down his personal, confidential IAB

code number on a piece of paper which he had tacked on his bulletin board at his desk and that

anyone who merely wandered by his desk could easily have obtained and used his personal,

confidential code number.  This unsupported claim (Clohessy testified that he never saw this

piece of paper) appears neatly contrived to explain how anyone could have used his code number

to access IAB computer records via a computer terminal located inside his command at a time

when he asserts he was not present at his command, without the Respondent having to accuse a

specific co-worker of having used his code.

      The Respondent is found Guilty of Specification No. 5.

<u>DETECTIVE LISSANDER DONES</u>                                                                        17

<u>PENALTY</u>

In order to determine an appropriate penalty, the Respondent's service record was examined.  See <u>Matter of Pell v. Board of Education</u>, 34 N.Y.2d 222 (1974).

The Respondent was appointed to this Department on January 21, 1985.  Information from his personnel folder that was considered in making this penalty recommendation is contained in an attached confidential memorandum.

With regard to the Respondent's misconduct of wrongfully divulging official Department business to Nieves Diaz, there is no evidence that the Respondent had any reason to even suspect that Nieves Diaz and Vasquez had ever committed a crime together, much less any reason to suspect that they had stolen cash from a drug dealer (<u>Disciplinary Case No. 80121/04</u>).

Thus, it is clear the Respondent did not telephone Nieves Diaz in order to assist him. Rather, the Respondent called Nieves Diaz to gossip about the arrest of a former co-worker. Moreover, although the Respondent should not have disclosed to Nieves Diaz that Vasquez had just been arrested regarding a "drug rip off," the fact that Nieves Diaz was assigned to OCID Inspections at this time lends legitimacy to the Respondent's claim that he believed that it was likely that Nieves Diaz already knew or would soon learn at his command that Vasquez had been arrested.

Similarly, with regard to the Respondent's misconduct of accessing IAB PRO on his RDO to make unofficial inquiries for non-Departmental purposes, it is clear that the Respondent accessed the Vasquez logs out of mere curiosity and not for any pecuniary or corrupt purpose.

In <u>Disciplinary Case No. 75308/99</u>, the Respondent police officer, who was assigned to the Intelligence Division, was found guilty of wrongfully divulging official Department business

DETECTIVE LISSANDER DONES

in that she disclosed to her boyfriend that she had learned that her command had performed a

HIDTA check on him.  Although the Respondent in that case was required to forfeit 30 vacation

days, this penalty reflected the fact that the Respondent was also found guilty of wrongfully

associating with a felon.  Also, although the Respondent in that case was required to serve one

year on dismissal probation, the Respondent in that case was a seven-year member whereas the

Respondent here is a 20-year member who has an outstanding performance record and no prior

formal disciplinary record.

In consideration of the Respondent's performance record and his lack of a prior formal

disciplinary record, it is recommended that the Respondent be required to forfeit 20 vacation

days.

Respectfully submitted,

Robert W. Vinal
Assistant  Deputy Commissioner - Trials

**APPROVED**

JUN 1 3 2005

RAYMOND W. KELLY
POLICE COMMISSIONER

# DISPOSITION OF CHARGES

PD 468-142A (7-93)-h2

| | |
|---|---|
| CASE NO. | 80292/04 |
| BOOK & PAGE NO. | 1 of 2 |
| PERSONNEL ORDER NO. | |

**SPECIFICATIONS AGAINST**

| RANK/SURNAME, | FIRST | M.I. | COMMAND |
|---|---|---|---|
| Detective   Dones, Lissander | | | Housing Borough Bronx/Queens |

| SHIELD NO. | TAX REGISTRY NO. | SOCIAL SECURITY NO. | DATE APPOINTED |
|---|---|---|---|
| 2648 | 885547 | 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 | January 21, 1985 |

| RANK/NAME OF COMPLAINANT | COMMAND |
|---|---|
| Inspector Varrie Jackson | TAB GROUP #41 |

| DATE OF CHARGES | DATE TRIAL COMMENCED | DATE TRIAL CONCLUDED |
|---|---|---|
| September 10, 2004 | February 1, 2005 | February 2, 2005 |

| TRIAL COMMISSIONER |
|---|
| Honorable Robert W. Vinal |

| SPECIFICATIONS | DISPOSITION | RECOMMENDED PENALTY PLEA ☐   TRIAL ☒ |
|---|---|---|
| 1. Said Detective Lissander Dones, assigned to Internal Affairs Bureau, on or about November 26, 2003 and November 28, 2003 did wrongfully and without just cause prevent or interfere with an official Department investigation. | NOT GUILTY | It is recommended that the Respondent forfeit 20 vacation days. |
| 2. Said Detective Lissander Dones, assigned as indicated in Specification No. 1, on or about November 26, 2003 and November 28, 2003, wrongfully divulged or disclosed official Department business. | GUILTY | |
| 3. Said Detective Lissander Dones assigned to the Internal Affairs Bureau, during an official Department investigation, conducted by Lieutenant Ronald Mejia and Sergeant Francis Teran of Internal Affairs Bureau Group #41, on September 7, 2004, pursuant to the provisions of Patrol Guide Section 206-13 did wrongfully make false and misleading statements. *(As amended)* | NOT GUILTY | |

Reviewed by Deputy Commissioner of Trials

| | |
|---|---|
| DEPUTY COMMISSIONER | DATE 6/1/05 |

Police Commissioner's Approval:

☑ Approved

☐ Disapproved

☐ Other Action (Describe)

| | |
|---|---|
| POLICE COMMISSIONER | DATE 6/13/05 |

# DISPOSITION OF CHARGES

PD 468-142A (7-93)-h2

| | |
|---|---|
| CASE NO. | 80292/04 |
| BOOK & PAGE NO. | 2 of 2 |
| PERSONNEL ORDER NO. | |

SPECIFICATIONS AGAINST
RANK/SURNAME,                    FIRST                        M.I.
Detective  Dones, Lissander

COMMAND
Housing Borough
Bronx/Queens

| SHIELD NO. | TAX REGISTRY NO. | SOCIAL SECURITY NO. | DATE APPOINTED |
|---|---|---|---|
| 2648 | 885547 | 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 | January 21, 1985 |

RANK/NAME OF COMPLAINANT
Inspector Valrie Jackson

COMMAND
IAB GROUP #41

| DATE OF CHARGES | DATE TRIAL COMMENCED | DATE TRIAL CONCLUDED |
|---|---|---|
| September 10, 2004 | February 1, 2005 | February 2, 2005 |

TRIAL COMMISSIONER

Honorable Robert W. Vinal

| SPECIFICATIONS | DISPOSITION | RECOMMENDED PENALTY PLEA ☐   TRIAL ☒ |
|---|---|---|
| 4. Said Detective Lissander Dones assigned to the Internal Affairs Bureau, on or about November 28, 2003, while off duty, did wrongfully and without just cause operate a Department vehicle #169 without permission or authority to do so.  *(As amended)* | NOT GUILTY | See Card No. 1. |
| 5. Said Detective Lissander Dones assigned to the Internal Affairs Bureau, on or about November 28, 2003, while off duty, did access a Department computer, IAB PRO, and make unofficial inquiries for non-Departmental purposes. *(As amended)* | GUILTY | |

Reviewed by Deputy Commissioner of Trials

_____ DEPUTY COMMISSIONER                    _____ DATE  6/1/05

Police Commissioner's Approval:

☑ Approved

☐ Disapproved

☐ Other Action (Describe)

_____ POLICE COMMISSIONER                    _____ DATE  6/3/05