**EXHIBIT 11**

1    Q.   Were you ever told that you were the subject of the
2  investigation?
3    A.   No. I found out in the trial room that I was a
4  subject of the investigation.
5    Q.   And what investigation were you the subject of?
6    A.   During the trial room, they told me that my name
7  had popped up in their investigation because I have placed a
8  phone call to Nieves-Diaz. So when they ran his phone
9  records and they got my name and they found out that I worked
10 in IAB, now they treated me like a subject.
11   Q.   At the trial they said that they treated you like a
12 subject?
13   A.   No. At the trial they told me now I'm a subject
14 because I am involved in the investigation in whichever way
15 it was.
16   Q.   To your recollection, they knew this when they
17 showed up at your door in July of 2004?
18   A.   Yes.
19   Q.   So you said that you were placed on modified duty.
20 So where did you have to report to?
21   A.   Well, I was placed on modified but they left me.
22   Q.   At group one?
23   A.   At group one, but on modified, which means I don't
24 have a gun and I can't go out in the street. I am sitting in
25 the office, doing administrative work.

**EXHIBIT 12**

P.G. 206-07 Cause For Suspension Or Modified Assignment

Date Effective: 01-01-00

PURPOSE

To describe those actions for which uniformed or civilian members of the service may be suspended or, for which uniformed members of the service may be placed on modified assignment.

NOTE: Civilian members of the service may NOT be placed on modified assignment.

1. The Police Commissioner, a Deputy Commissioner, a hearing officer assigned to the Office of Deputy Commissioner - Trials, the Chief Surgeon, Deputy Chief Surgeon, a civilian director, or a uniformed member of the service in the rank of captain or higher may suspend a member of the service (uniformed or civilian) or place a uniformed member of the service on modified assignment when, in their opinion, such action is necessary.

2. A ranking officer (uniformed member of the service in rank of sergeant or above) in-charge or in-command MUST SUSPEND a member of the service when the member:

   a. Refuses to perform assigned duties at roll call or during tour of duty

   b. Refuses an order of a ranking member to answer question specifically directed and narrowly related to the performance of official duties, after being informed of member's rights as specified in P.G. 206-13, "Interrogation Of Members Of The Service"

   c. Is absent without leave for five (5) consecutive tours

   d. Refuses to obey a lawful order by a ranking member

   e. Refuses to submit to a drug-screening test

   f. Has an interest in, or association with, or patronizes premises (licensed or unlicensed) engaged in illegal gambling operations, use of drugs, smoke shops, social clubs, or after hours clubs, except in the performance of duty.

   NOTE: Traffic Managers and Administrative School Safety Managers are authorized to suspend civilian personnel under their command for violations listed in step 2 above. (The principal of the school where the school safety agent is assigned will be notified of the suspension). Suspension by a ranking officer, by a Traffic Manager or an Administrative School Safety Manager, other than a captain and above, is by authority of the First Deputy Commissioner. Prior conferral or approval of the First Deputy Commissioner is NOT required.

3. A captain or above may place a uniformed member of the service on modified assignment or suspension when a member:

   a. Is indicted by a grand jury

   b. Is arrested

   c. Is served with CHARGES AND SPECIFICATIONS (PD468-121), alleging serious

00001

Misconduct

d. Is unfit for duty due to the effects of an intoxicant or drug or after effects thereof.

e. Patronizes an unlicensed premises (neighborhood tavern or restaurant) with an expired/suspended license where the only apparent illegal activity is the sale of alcoholic beverages, except in the performance of duty.

NOTE: A member of the service (uniformed or civilian) presently on suspension, or a uniformed member of the service on modified assignment pursuant to either steps 2 or 3 above, MUST be re-suspended or suspended, as applicable, for any subsequent violation of the subject steps.

ADDITIONAL DATA

In all cases in which the investigating commanding officer/duty captain is contemplating changing the duty status of a member of the service (i.e., suspension, modification or restricted duty pending evaluation of duty status), he/she should confer with the Internal Affairs Bureau Command Center to ascertain any relevant information pertaining to the member(s) of the service, PRIOR to making this decision. This conferral is to obtain background information that may assist in the investigation. All decisions regarding the investigation, as well as any resulting determination regarding the member's duty status, remain the responsibility of the commanding officer/duty captain concerned.

In appropriate cases, a captain or above may assign a uniformed member of the service to administrative duties in the next higher command without placing the member on suspension or modified assignment, when there is no disciplinary action contemplated and facts or circumstances indicate such assignment would be in the best interests of the Department.

The borough commander/counterpart will review the assignment within three (3) days and determine further appropriate action. A report of this review and results, including the anticipated date member will be returned to command, will be prepared on Typed Letterhead and forwarded to the First Deputy Commissioner.

In all cases where the decision to suspend a member of the service (uniformed or civilian) or to place a uniformed member of the service on modified assignment is based on the discretion of the captain or above (steps 1 and 3 of this procedure), he/she will, prior to making that decision, confer with the borough commander/counterpart or executive officer.

The Office of Deputy Commissioner - Legal Matters will be available for questions related to law and the Department Advocate's Office will be available for advice on procedures for suspension or modified assignment. However, the decision to suspend or place a uniformed member of the service on modified assignment will rest with the field commander.

A ranking officer who reasonably believes that a uniformed member of the service is unfit for duty due to effects of an alcoholic intoxicant will notify the precinct commander/duty captain who will respond, conduct an investigation, and based upon common sense standards determine if the member is fit for duty. If found unfit, whether on or off duty, the captain making such determination will suspend the member or place him/her on modified assignment; apprise the member concerned of the availability of the Counseling Service Program, and, if the member desires to participate, contact the Counseling Service DIRECT, during normal business hours, or during other than business hours, request conferral by contacting the Sick Desk supervisor.

The precinct commander/duty captain will also prepare seven (7) copies of report on Typed Letterhead detailing observations and circumstances leading to determination of unfitness and action taken. Forward copies (DIRECT) to First Deputy Commissioner, Deputy Commissioner - Trials, Chief of Department, Chief of Personnel, Department Advocate's Office, and the IAB copy to the Bureau or Command. An additional copy will be forwarded to the First Deputy Commissioner (THROUGH CHANNELS).

FORMS AND REPORTS
CHARGES AND SPECIFICATIONS (PD468-121)
Typed Letterhead

P.G. 206-10 Modified Assignment

Date Effective: 01-01-00

PURPOSE

To assign a uniformed member of the service to non-enforcement duties pending determination of fitness to perform police duties.

[I.O. 28 s 01] SCOPE

Firearms may be removed from a uniformed member of the service for disciplinary as well as non-disciplinary reasons. In incidents where there is no misconduct and no disciplinary action is anticipated, the member will not be placed on modified assignment. When a firearms removal is based on non-disciplinary factors, the ranking officer directing the removal will comply with the applicable provisions of Interim Order, 28(01), "Temporary Removal of Firearms In Non-Disciplinary Cases.

PROCEDURE

When placing a uniformed member of the service on modified assignment:

RANKING OFFICER IN CHARGE

1. Inform member that assignment is contingent upon being available for prompt departmental disciplinary trial.

2. Remove firearms, shield, IDENTIFICATION CARD (PD416-091) and other Department property as directed in P.G. 206-17, "Removal And Restoration of Firearms". (Member may retain Department Manual).

3. Direct member to report in civilian clothes at 0900 hours, the next business day to Personnel Orders Section.

4. Enter facts in Command Log.

5. Notify supervisor on duty at Operations Unit immediately.

6. Notify Internal Affairs Bureau Command Center.

7. Immediately submit report (DIRECT) to First Deputy Commissioner, Deputy Commissioner - Trials, Chief of Department, Chief of Personnel, Dept. Advocate, and member's commanding officer. Forward additional copy of report to First Deputy Commissioner (THROUGH CHANNELS).

**EXHIBIT 13**

| Date | time | IA-Log# | Case |
|---|---|---|---|
| 11/28/03 | 14:14 hrs | 9105921 | C911194 |

Missing Property- Det Vasquez – Beach chair-S/W

| 11/28/03 | 14:15 | 9210439 | C922112 |

Info from US attorney's Office MOS involved in Drug use and RIPS
Det Vasquez-Det Castro

| 11/28/03 | 14:16 | 02-20879 | C02-0442 |

Anonymous Po Missing prop from S/W Cable box
Det Vasquez

| 11/28/03 | 14:17 | 03-04847 | FI |

Det Vasquez's Firearm Discharge –

| 11/28/03 | 14:17 | 03-31243 | C03-0963 |

Det Rachko & Det Vasquez 169K RIP

| 11/28/03 | 14:17 Alert Accessed/Viewed |||
| 11/28/03 | 14:20 | 03-31243 | C03-0963 |

Det Rachko & Det Vasquez 169K RIP

| 11/28/03 | 14:21 | 9510720 | C956316 |

Medication Removed-HPD log- Det Rachko

| 11/28/03 | 14:22 | 15564 | C0000764 |

Det Rachko's CI reports ▓▓▓▓▓ takes USC

| 11/28/03 | 14:23 | 03-31243 | C03-0963 |

Det Rachko & Det Vasquez 169K RIP

| 11/28/03 | 14:24 | 02-28060 | M02-2300 |

▓▓▓▓▓▓▓▓▓▓▓ OT-Misuse

| 11/28/03 | 14:25 Alert Viewed accessed |||
| 11/28/03 | 14:25 | 9414276 | C942300 |

▓▓▓▓▓ Prisoner dispute of charges

```
11/28/03   14:22      accessed log re TR CI reports - Hector River
11/28/03   14:23      accessed log re Vasquez and TR $169k rip
11/28/03   14:24      log re Lt. Ralph Concepcion, Det Sigalakis OT
                      [separate case from OT case on NievesDiaz,
                      LND and RC and Dones used to work together]
11/28/03   14:25      alert accessed/viewed
11/28/03   14:25      log re Ralph Concepcion - prisoner
12/03/03   15:35      646-489-6325    917-334-8456    1.0    6325
12/09/03   12:00      646-489-6325    917-334-8456    1.0    6325
12/09/03   12:22      917-334-8456    646-489-6325    5.0    8456
12/09/03   13:40      accessed log re PO Murray - family disput
12/09/03   13:41      accessed log re Asian male IDs self as PO
12/09/03   13:46      accessed log re choking of Compl
12/09/03   13:46      accessed log re TR/JV newspaper article.
                      ?Compl states she worked on Mollen Comm w Sal
                      Nieves, she had info on corruption [chronic
                      caller]
12/10/03   15:57      917-334-8456    646-489-6325    1.0    8456
12/10/03   15:58      646-489-6325    917-334-8456    1.0    6325
12/11/03   11:59      646-489-6325    845-565-6041    1.0    6325
12/11/03   12:00      917-334-8456    646-489-6325    1.0    8456
12/11/03   12:26      917-334-8456    646-489-6325    9.0    8456
12/23/03   15:11      646-489-6325    917-334-8456    1.0    6325
12/23/03   15:11      646-489-6325    917-334-8456    0.5    8456
12/23/03   15:47      917-334-8456    646-489-6325    4.0    8456
02/09/04   14:27      646-489-6325    917-334-8456    3.0    6325
02/09/04   14:28      917-334-8456    646-489-6325    18.0   8456
02/18/04   10:29      917-334-8456    646-489-6325    3.0    8456
04/13/04   17:24      646-489-6325    646-326-0342*   0.5    8456
04/13/04   17:28      917-334-8456    646-489-6325    0.5    8456
04/13/04   17:28      917-334-8456    646-489-6325    0.5    8456
04/13/04   20:01      917-334-8456    646-489-6325    5.0    8456
04/13/04   20:06      917-334-8456    646-489-6325    1.0    8456
04/13/04   20:07      917-334-8456    646-489-6325    0.5    8456
06/01/04   12:42      917-334-8456    347-232-8154**  2.0    6325
06/01/04   12:42      917-334-8456    646-489-6325    2.0    8456
```

*no # entered for "called nbr", 646-326-0342 were "dialed digits", message when called 06/16/04 auto voice sd the # or code you dialed was incorrect

** listed as "called nbr" and "dialed digits" from records of 6325 [3-way call?] [kh called # on 06/24/04, auto voice sd the # or code you dialed was incorrect

Lt. Ralph Concepcion 718-499-9366, 2/26/67, 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, 70 Prospect Park West, Brooklyn, NY 11215
90 narcotics div uca, 90-94 PO in Mahnattan N narc east, Brooklyn South narc

TOTAL P.02

00001056

**EXHIBIT 14**

```
                           pd020205
16 official Department investigation already commenced,
17 and Detective Dones was the subject of that
18 investigation, correct?
19      A    Counsel --
20      Q    Sir, did you do that --
21           COMM. VINAL: I'm going to rule that
22      that was asked and answered previously.
23           MR. KARASYK: No further questions.
24           COMM. VINAL: Any further questions, Ms.
25      Baptiste?


          (212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-5235
```

                                                             279
```
1                    Teran - Redirect
2           MS. BAPTISTE: Yes.
3 REDIRECT EXAMINATION
4 BY MS. BAPTISTE:
5       Q    Detective Dones, explain what you
6 mean --
7            COMM. VINAL: Sergeant Teran.
8       Q    Sergeant Teran, please explain what you
9 mean when you say he was the subject of an
10 investigation.
11      A    This is what I wanted to clear up.
12           At that point, he was a person who was
13 going to be spoken to by the Feds, to determine
14 whether or not he would become a subject or he wasn't
15 a subject.
16           COMM. VINAL: I'm sorry, the question I
17      believe related to the Internal Affairs Bureau,
                             Page 73
```

pd020205

18  the official Department investigation, the case
19  number you testified that was opened a month or
20  two prior to July, 2004.
21       Was the Respondent a subject of that
22  investigation, not the federal investigation?
23  That is the question.
24       MS. BAPTISTE:  Right.
25    A    He became a person who was going to be

(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-5235

u

                                                    280
1              Teran - Redirect
2  interviewed based on the information that we had
3  obtained through phone records pertaining to Louis
4  NievesDiaz.
5       COMM. VINAL:  What was the status?
6       THE WITNESS:  He was going to be
7  interviewed.  He was --
8       COMM. VINAL:  Did he have an official
9  status regarding that case number that was
10 opened?
11      THE WITNESS:  There was no case number
12 that was opened on him at that time.
13      COMM. VINAL:  I'm a little confused.
14      At the very beginning of
15 cross-examination, you indicated that a month or
16 two -- I have that in quotations -- prior to
17 July, 2004, a case number was opened, and that
18 the Respondent was the subject of an official

Page 74

00001423

```
                          pd020205
    19     Department investigation.
    20            What part of that is incorrect?
    21            THE WITNESS:  I don't recall saying that
    22     there was a case opened on Detective Dones.  He
    23     was part of an ongoing investigation which
    24     started in 2003 relative to the Julio Vasquez
    25     arrest.
```



(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-5235

                                                         281
```
    1                 Teran - Redirect
    2            Detective Dones' name came up in phone
    3     records.  He was being interviewed as part of
    4     that investigation.
    5            COMM. VINAL:  You are saying he didn't
    6     have a status as of the interview that occurred
    7     in July?
    8            THE WITNESS:  That's correct, he was
    9     not --
    10           MR. KARASYK:  Commissioner --
    11           COMM. VINAL:  It is for clarification.
    12           I'm confused.  I listened very carefully
    13     to the questions asked and the answers given in
    14     the beginning of the examination.
    15           My impression was there was a specific
    16     case number related to Detective Dones.
    17           THE WITNESS:  No, no.
    18           COMM. VINAL:  Okay.
    19           THE WITNESS:  There was not.
    20           COMM. VINAL:  I was under the impression
                         Page 75
```



00001424

pd020205

```
21    that you were asked whether he was the subject at
22    that point, July, 2004, of the IAB investigation
23    based on the information you just indicated you
24    had thus far received or procured, and your
25    answer was, yes, he was the subject of the
```

(212) 349-9692 TANKOOS REPORTING COMPANY (516) 741-5235

282

```
1              Teran - Redirect
2     investigation.
3             MR. KARASYK:  That is clearly --
4             COMM. VINAL:  The record speaks for
5     itself.  I'm asking for clarification.
6             THE WITNESS:  If I may, in that subject
7     he was a person who was going to be interviewed.
8     He was not --
9             COMM. VINAL:  Is that an official IAB
10    status, a person who is going to be interviewed?
11            THE WITNESS:  The outcome of the
12    interview would have made him the subject or not
13    a subject.
14    Q    Maybe if you can define what you mean by
15    "subject."
16            COMM. VINAL:  I have to be honest with
17    you, I'm not interested in his definition, his
18    definition under IAB procedures, his
19    understanding of procedures, how someone is or is
20    not the subject of an investigation under
21    Internal Affairs procedures.
```

Page 76

00001425